**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEST VIRGINIA LABORERS PENSION TRUST FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>THE ESTÉE LAUDER COMPANIES INC., FABRIZIO FREDA, and TRACEY T. TRAVIS,<br><br>                    Defendants. | Civil Action No.<br><br><br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATION
OF THE FEDERAL SECURITIES LAWS**

Plaintiff West Virginia Laborers Pension Trust Fund ("Plaintiff"), individually and on behalf of all others similarly situated, by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (1) The Estée Lauder Companies Inc.'s ("Estée" or the "Company") regulatory filings with the U.S. Securities and Exchange Commission ("SEC"); (2) press releases and media reports issued and disseminated by the Company; (3) analyst and media reports concerning the Company; and (4) other public information regarding the Company, including statements made by Estée executives.[1] Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein after a reasonable opportunity for discovery.

---

[1] Emphasis has been added unless otherwise noted.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Estée's common stock between February 3, 2022 and October 31, 2023, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").  The claims asserted herein are alleged against Estée, Fabrizio Freda ("Freda"), and Tracey T. Travis ("Travis") (collectively "Defendants").

2.      Estée, headquartered in New York, New York, is a leading manufacturer and seller of luxury cosmetics, skincare products, and other related goods.  Asian markets, such as China and Korea, are critical for the Company's sales growth.  In particular, "travel retail," which includes duty-free stores found in airports, cruise ships, and the like, is an important sales area for Estée in its Asian markets.

3.      For years, Estée's business in Asia has been reliant on a specialized reselling industry which is prevalent in China and Korea (referred to as "daigou" in China).  Specifically, individuals or a syndicated group of exporters purchase large amounts of Estée cosmetics in duty-free stores outside of mainland China and Korea and then resell those goods back home to end consumers at discount prices.

4.      Although this sales channel allowed for high revenue growth in the short term, relying on such reselling activity posed a material risk to Estée's business in Asia.  First, selling large amounts of product through these discount resellers can hurt the Company's brand equity, making it harder for Estée to sell its goods at full price through standard retail channels.  Second, governmental restrictions can effectively reduce sales activity by these resellers, which can cause inventory pile-ups within the supply chain and a slowdown to the Company's revenues.

5.      Indeed, at the beginning of 2022, governments in Asia began to strengthen oversight and regulation of resellers.  This crackdown caused the resellers to significantly reduce

their purchases of Estée products during the Class Period.  As the Company lost the ability to sell a large volume of its products through resellers in Asia, inventory levels of Estée cosmetics increased throughout the supply chain.

6.      Nonetheless, throughout the Class Period, Defendant misled investors by touting Estée's revenue growth and issuing favorable financial guidance while failing to disclose that: (1) Estée's revenue growth prior to the Class Period was largely driven by purchases made by resellers; (2) stricter regulations on resellers were causing them to purchase fewer Estée products, which was resulting in elevated inventories throughout the supply chain and a sales slowdown for the Company; and (3) these elevated inventory levels were forcing Estée to discount its products in an attempt to reduce inventory, leading to lower revenues and profit margins.

7.      The truth began to emerge through a series of disclosures in late 2022 and 2023. As Estée's product sales to resellers slowed down, inventory piled up forcing the Company to repeatedly lower its revenue forecasts which partially exposed the Company's supply chain and inventory issues to investors.

8.      The full truth about Estée's issues was revealed on November 1, 2023, when Estée again lowered its financial outlook citing a slower pace of recovery in net sales and profit margins. The Company also announced that it was accelerating and expanding a restructuring plan to recover Estée's profitability.  On this news, the price of Estée common stock declined $24.36, or nearly 19 percent, to close at $104.51 on November 1, 2023.

9.      As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Estée's stock, Plaintiff and the Class suffered significant losses and damages under the federal securities laws.

## JURISDICTION AND VENUE

10.    Plaintiff brings this action on behalf of itself and other similarly situated investors to recover losses sustained in connection with Defendants' fraud.

11.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

13.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Estée is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

14.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

15.    Plaintiff purchased Estée common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud.   Plaintiff's certification evidencing its transactions in Estée common stock is attached hereto.

16.    The Estée Lauder Companies Inc. is a Delaware corporation with its principal executive offices located at 767 Fifth Avenue, New York, New York 10153.  During the Class Period, the Company's common stock traded on the New York Stock Exchange ("NYSE") under the ticker symbol "EL."

17.    Defendant Freda was, at all relevant times, the President, Chief Executive Officer, and Director of Estée.

18.    Defendant Travis was, at all relevant times, the Executive Vice President and Chief Financial Officer of Estée.

19.    Defendants Freda and Travis are sometimes referred to herein as the "Individual Defendants."   Estée together with the Individual Defendants are referred to herein as the "Defendants."

20.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Estée's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

21.    Estée is liable for the acts of the Individual Defendants, and its employees under the doctrine of *respondeat superior* and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

22.     The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Estée under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Company Background

23.     Estée manufactures, markets, and sells skin care, makeup, fragrance, and hair care products worldwide.  It offers its products under brands such as Estée Lauder, Aramis, Clinique, Lab Series, Origins, M·A·C, La Mer, and Bobbi Brown Cosmetics.  The Company sells its products through department stores, specialty-multi retailers, upscale perfumeries and pharmacies, and salons and spas, freestanding stores, its own and authorized retailer websites, third-party online malls, stores in airports, and duty-free locations.

24.     Markets in Asia, including China and Korea, are critical to Estée's growth and financial performance.  "Travel retail," which includes duty-free stores found in airports, cruise ships, and the like, is an important growth area for Estée in these Asian markets and elsewhere. One particularly important area for the Company's travel retail sales is China's southern island province of Hainan, known as "the Hawaii of China."

25.     Resellers have fueled the Company's sales and growth in its Asian travel retail markets for years.  Resellers in the travel retail market purchase large quantities of goods from duty-free stores then resell them back home, often in mainland China.  Such reselling, referred to as the "daigou" industry in China, has long helped Estée get its products into the hands of end consumers.  COVID-19 lockdowns, which lasted longer in certain Asian countries such as China than in the United States, greatly reduced travel, thus weakening demand in travel retail markets. During this period, resellers became even more critical to Estée's sales growth because end consumers were restricted from traveling and became more dependent on resellers in the retail travel markets for their Estée product purchases.

6

26.     At the beginning of 2022, governments in markets such as China implemented new regulations and restrictions on resellers that made their businesses less profitable.  This crack down led to less purchases in the travel retail markets by the resellers, which caused an inventory pile-up in Estée's supply chain and a slowdown to the Company's sales.

**Materially False and Misleading Statements Issued During the Class Period**

*Second Fiscal Quarter 2022*

27.     The Class Period begins on February 3, 2022, when the Company announced its financial results for its second fiscal quarter of 2022 ended December 31, 2022.  During the related earnings call, Defendant Freda claimed the Company was prospering "with Chinese consumers as well as in global travel retail."  Further, Defendants claimed they were "excited about the long-term growth opportunity in the vibrant Asia/Pacific region and, most notably, in China."  Defendants also touted the market in Hainan, claiming it "continue[d] to be a very strong driver of [Estée's] travel retail business."

*Third Fiscal Quarter 2022*

28.     On May 3, 2022, the Company announced its financial results for its third fiscal quarter of 2022 ended March 31, 2022.  That same day, the Company hosted its earnings call to discuss those financial results.  During that call, Defendant Freda touted "demand across channels from brick-and-mortar to online and travel retail" and claimed that "China consumer demand . . . is strong."  Defendant Freda also claimed that the Company's "confidence into Hainan [in the] future is unchanged."

*Fourth Fiscal Quarter 2022 and Full Year 2022*

29.     Then, on August 18, 2022, the Company announced its financial results for its fourth fiscal quarter of 2022 and for the fiscal year ended June 30, 2022.  As part of these financial results, the Company disclosed an increase of 9% in net sales from the prior-year period, in

addition to an 8% increase in organic net sales. Defendants assured investors that to combat record inflation, supply chain disruptions, and COVID-19 headwinds, the Company would be implementing strategic price increases, mix optimization, and cost savings in certain areas.

30.     During the Company's related earnings call that was held on August 18, 2022, Defendants further assured investors that the Company anticipated reliable growth and profitability for its fiscal year 2023, stating "our more effective cost structure, pricing power and strong cash generation should afford us the flexibility to successfully navigate the ongoing complex environment."

31.     Additionally, Defendants noted that the Company was "confident in the long-term growth opportunity in Mainland China, evidenced by our expansion into almost 100 new doors and 3 additional cities in fiscal year 2022 . . . ." When asked by an analyst about Estée's underlying market share performance in China as supply returns to normal, Defendant Freda responded:

> **[W]e do expect for the full year, China to go back growing double digit. We expect strong recovery in Hainan in the second part, in the second semester of the fiscal year, for sure, a gradual recovery before. That's our assumption, which obviously is going to give us also results in market share.**
>
> . . .
>
> **We believe the Hainan -- despite the current lockdown, which is obviously painful in the short term, but is a super strong opportunit[y] for the long term, the power of Hainan in the future remain intact, and we have strong presence and market share in this operation.**

32.     Similarly, Defendant Travis emphasized improvements made by the Company to drive profitability despite COVID-19 headwinds by stating: "[d]uring the year, we continue to create more flexibility in our cost structure to absorb inflation in wages, media and logistics. We achieved significant savings from our cost initiatives, including the post-COVID business acceleration program. This has enabled us to realize great expense leverage while also reinvesting

in areas that support profitable growth, resulting in an overall improvement in our operating margin."

33.    During the earnings call, Defendant Travis also addressed supply chain issues by stating: "[w]e utilized $1 billion for capital improvements, an increase of approximately $400 million over last year.  We continue to invest in capacity and other supply chain improvements. We increased consumer-facing investments to support in-store experiences and recovery markets. We renovated office space, and we continue to invest in information technology."

34.    Such statements made by Defendants during the Class Period, along with materially flawed revenue guidance issued during the Class Period which lacked a reasonable basis, were false and/or materially misleading because Defendants failed to disclose that: (1) Estée's revenue growth prior to the Class Period was largely driven by purchases made by resellers; (2) stricter regulations on resellers were causing them to purchase fewer Estée products, which was resulting in elevated inventories throughout the supply chain and a sales slowdown for the Company; and (3) these elevated inventory levels were forcing Estée to discount its products in an attempt to reduce inventory, leading to lower revenues and profit margins.

**The Truth Begins to Emerge as Defendants Continue to Mislead Investors**

*First Fiscal Quarter 2023*

35.    The truth began to emerge on November 2, 2022, when Estée issued a press release announcing financial results for its first fiscal quarter of 2023 ended September 30, 2022.  As part of these results, the Company reduced its full year outlook for 2023 "primarily to reflect tighter inventory management in Asia travel retail."  The press release stated, in pertinent part, that:

> The Company expects the remainder of the fiscal year to be pressured by the temporary disruptions due to headwinds from the COVID-19 restrictions in China, the strengthening of the U.S. dollar, record-high inflation, supply chain disruptions, and the risk of a slowdown in certain markets globally.

. . .

> The Company expects its first-half results to be negatively impacted by the ongoing challenges from the COVID-related restrictions affecting Asia travel retail, including tightening of retailer inventory, and mainland China.  The Company also expects the tightening of inventory in the United States to negatively impact its first-half results.

36.     On this news, the price of Estée common stock declined $16.80, or more than 8 percent, to close at $189.96 on November 2, 2022.

37.     Although some information about the Company's true financial condition was revealed, Defendants continued to mislead investors.  During the earnings call on November 2, 2022, Defendants assured investors that the revised guidance still represented growth with Defendant Freda noting "[w]e expect a gradual sequential improvement to low double-digit organic sales growth and high teens adjusted EPS growth on a reported basis in the second half of fiscal year 2023.  As these pressures begin to abate, the momentum in other areas of our business builds and our ongoing investments drive growth."

38.     Defendants also emphasized that the Company was already resolving its supply chain issues, with Defendant Travis stating "[w]e invested $152 million in capital expenditures for supply chain improvements, online capabilities and distribution expansion."

39.     The aforementioned statements were false and/or materially misleading because they failed to disclose the issues in the Company's supply chain management and travel retail business.

*Second Fiscal Quarter 2023*

40.     The truth was further revealed on February 2, 2023, when Estée issued a press release announcing financial results for its second fiscal quarter of 2023 ended December 31, 2022.  Despite meeting second quarter expectations, the Company again lowered its outlook for fiscal

2023 due to inventory issues and issues in its travel retail markets.  The press release stated in

pertinent part:

> For fiscal 2023, we are lowering our outlook given the November
> and December disruption to travel and staffing levels in Hainan that
> slowed the expected normalization of inventory and the recently-
> announced potential roll-back of COVID-related supportive
> measures in Korea duty free.

41.     On this news, the price of Estée common stock declined $19.63, or 7 percent, to

close at $261.17 on February 6, 2023.

42.     However, Defendants continued to misrepresent the Company's business position.

For instance, on Estée's earnings call the same day, Defendant Travis was asked about Estée's

supply chain management, specifically as it relates to China and claimed that:

> ***One, inventory levels are still coming down in Hainan.  They are
> almost at the level that we would expect sales to accelerate.  So yes,
> you should start to see an inventory build related to the shipments
> that we expect to see in Q4.***  In Korea, again, the pace is a little bit
> more uncertain given the transitory nature of what's going on right
> now.
>
> So we do anticipate, as I mentioned in the prepared remarks, that we
> will start to see resumption of travel in Korea.  And depending on
> the pace of that resumption, that will depend on the amount of
> shipments that we have in the quarter.  But we have taken obviously
> an assumption there.  ***We are sitting on a decent amount of
> inventory even in our own warehouses to supply the sales that we
> expect to see in the fourth quarter.***

43.     Defendant Freda continued to tout the Company's increase in market share and

retail sales in China stating, in part:

> ***And so China, the results in the quarter were pretty good.  We built
> significant market share.***  So the overall market in China was
> negative double digit.  Our net sales were -- and our retail was
> negative single digit, and we built market share in every single
> category.  So in most risers, we build market share in makeup, in
> fragrance, in health care, in every aspect.  ***Now this, for us, is a very
> important sign that the -- our brands are really working.  The
> aspirational value of our brands remains very, very strong, which***

> ***in the moment of reopening is a very strong position to be.  So
> excellent performance relatively to market.***

44.     Such statements made by the Defendants were materially false and misleading because they failed to disclose to investors that supply chain management issues continued to exist, in addition to elevated inventory levels at retail partners.  They also failed to disclose the extent of the persistent problems the Company was facing in its Asia travel retail business.

*Third Fiscal Quarter 2023*

45.     Defendants' fraud was further revealed on May 3, 2023, when Estée issued a press release announcing financial results for its third fiscal quarter of 2023 ended March 31, 2023.  On that date, the Company announced a further reduction of fiscal year 2023 guidance because of the slow recovery in Asia travel retail markets.  The press release stated, in pertinent part, that:

> ***As the shape of recovery from the pandemic for Asia travel retail
> comes into better focus, it is proving to be both far more volatile
> than we expected and more gradual relative to what we
> experienced in other regions.***  We are, therefore, lowering our
> organic sales and EPS outlook for fiscal 2023 to reflect significantly
> greater headwinds in our fourth quarter than we expected in
> February.

46.     Defendants further attributed the reduction in guidance to the fact that ". . . its Asia travel retail business continued to be pressured by the slower than anticipated recovery from the COVID pandemic.  Specifically, in Hainan, while traffic into the island exceeded prior year levels, conversion of travelers to consumers in prestige beauty lagged.  This led to the slower than anticipated depletion of elevated levels of retailer inventory and, therefore, lower replenishment orders."

47.     During the related earnings call on May 3, 2023, Defendant Travis said that "compounding this pressure is the tightening of inventory by retailers in Hainan.  We now expect that a far more gradual return to normal sales growth in Asia travel retail is likely to persist into

the first half of fiscal 2024.  In addition, higher inflation and currency volatility, as well as promotions in certain markets to alleviate high stock levels more than offset our price increases and further pressured our business margins."

48.     During the question-and-answer segment of the call, Individual Defendants Travis and Freda responded to analyst questions about the Company's change in guidance and retailer inventory issues.  Defendant Travis claimed that:

> We ended up with more inventory in the trade than what's needed basically for the level of sales that were being done in Hainan.  So, our pullback in inventory right now given the pace of recovery that we're seeing, again we're encouraged, but the retail inventory needs to come down, and therefore, we are pulling back on our shipments.

49.     Similarly, Defendant Freda claimed that:

> [I]n theory it's really an issue of inventories versus pace of recovery. Another proof of that is our retail in travel retails is so much stronger than our net.  So, you have a minus 45% in Quarter 3 versus a single-digit decline in retail.  So, there is a lot of inventory absorption which is going on with the recovery.  And, a lot of the speed of this absorption will depend on the speed of the recovery that we have in front in us.  We are estimating that given the trend in this period in the Quarter 4, retail will go positive, and then, the absorption will continue to improve over time, and definitely continue in Quarter 1 of next fiscal year.

50.     Analysts at Deutsche Bank expressed concern about the Company's lowering of guidance for the third consecutive time stating "[w]hile we appreciate the complexity of current challenges in EL's travel retail (TR) business, the sheer magnitude of the reduced outlook and associated operating deleverage raises questions related to EL's capabilities vis-à-vis demand forecasting, visibility, and supply-chain agility in its most profitable geography and channel."

51.     On this news, the price of Estée common stock declined $42.52, or 17 percent, to close at $202.70 on May 3, 2023.

52.     However, Defendants continued to mislead investors regarding the Company's business prospects.  For instance, Defendant Freda claimed during the May 3, 2023 earnings call that "the challenges in travel retail are abating."   Further, Defendant Travis claimed that Defendants expected "a more continuous steady progression of recovery," because "COVID restrictions have been lifted."  Such statements continued to conceal the extent of the problems the Company was facing in its travel retail business.

*Fourth Fiscal Quarter 2023 and Full Year 2023*

53.     The truth was again partially revealed on August 18, 2023, when the Company released financial results for its fourth fiscal quarter of 2023 and fiscal year ended June 30, 2023. These results included a substantial decrease in sales stemming largely from the travel retail markets in China and Korea.

54.     On this news, the price of Estée common stock declined $5.37, or 3.3 percent, to close at $156.69 on August 18, 2023.

55.     However, Defendants continued to make false and misleading statements regarding the Company's business prospects.  For instance, in the same press release the Company claimed it was "taking actions to capture demand from the returning individual travelers and continuing to reduce inventories in the trade as we navigate the current market headwinds."   Further, the Company forecasted net sales increases between 5% and 7% for fiscal year 2024.

56.     Also on August 18, 2023, during the Company's earnings call, Defendant Freda claimed that Defendants believed the Company was "well positioned to return to organic sales growth and improve profitability."  Defendant Freda further claimed the Company had "created the base of much more information and timely information to take the right decisions in

coordination[,]" regarding its travel retail markets.  In the same vein, Defendant Travis stated that the Company had "no concerns whatsoever about travel retail growing with traveling consumers."

### The Truth Is Fully Revealed

*First Fiscal Quarter 2024*

57.     Finally, the truth behind Defendants' fraud was fully revealed on November 1, 2023 when the Company announced its financial results for its first fiscal quarter of 2024 ended September 30, 2023.  As part of these results, the Company disclosed a decline in sales driven by a persistently slow recovery in its Asia travel retail businesses and overall slow recovery in its China markets, revealing to investors that promised rapid growth in those markets was still far off. Defendants admitted that Estée's high inventory levels had prevented it from effectively responding to market developments.  The Company also announced that the slow pace of recovery had forced it to accelerate and expand a restructuring plan, which it called a "Profit Recovery Plan," to improve margin and lower operating expenses.  Finally, Estée cut its net sales estimate for fiscal year 2024.

58.     On this news, the price of Estée common stock declined $24.36, or nearly 19 percent, to close at $104.51 on November 1, 2023.

59.     As a result of Defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's common stock, Plaintiff and other members of the Class have suffered significant losses and damages.

### ADDITIONAL SCIENTER ALLEGATIONS

60.     During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements

or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

61.     The Individual Defendants permitted Estée to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's common stock.

62.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Estée, their control over, receipt, and/or modification of Estée's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Estée, participated in the fraudulent scheme alleged herein.

63.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Estée common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme deceived the investing public regarding Estée's business, operations, and management and the intrinsic value of Estée common stock and caused Plaintiff and members of the Class to purchase Estée common stock at artificially inflated prices.

## LOSS CAUSATION/ECONOMIC LOSS

64.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Estée's common stock, or maintained levels of artificial inflation in Estée's common stock price, and operated as a fraud or deceit on Class Period purchasers of Estée's common stock by materially misleading the investing public. Later, when Estée and Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the

price of Estée's common stock materially declined, as the prior artificial inflation came out of the price over time.  As a result of their purchases of Estée's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

## NO SAFE HARBOR

65.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Estée who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

66.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Estée's common stock during the Class Period and were damaged upon the revelation of the alleged corrective disclosure.  Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal

representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

67.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Estée's common stock was actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Estée or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.  As of October 25, 2023, there were approximately 232 million shares of the Company's common stock outstanding.  Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

68.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

69.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

70.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Estée;

(c)    whether the Individual Defendants caused Estée to issue false and misleading financial statements during the Class Period;

(d)    whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)    whether the prices of Estée's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

71.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### **Presumption of Reliance; Fraud-On-The-Market**

72.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)    Estée's common stock met the requirements for listing and was listed and actively traded on the NYSE during the Class Period, a highly efficient and automated market;

(b)    Estée communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)    Estée was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)    Unexpected material news about Estée was reflected in and incorporated into the Company's stock price during the Class Period.

73.    As a result of the foregoing, the market for Estée's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Estée's stock price. Under these circumstances, all purchasers of Estée's common stock during the Class Period suffered similar injury through their purchase of Estée's common stock at artificially inflated prices, and a presumption of reliance applies.

74.    Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## COUNT I

### Against All Defendants for Violations of
### Section 10(b) and Rule 10b-5 Promulgated Thereunder

75.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76.    This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

77.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

78.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of the Company's common stock during the Class Period.

79.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or

dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

80.     Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiff and the Class.

81.     As a result of the foregoing, the market price of the Company's common stock was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's common stock during the Class Period in purchasing the Company's common stock at prices that were artificially inflated as a result of Defendants' false and misleading statements.

82.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's common stock had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's common stock at the artificially inflated prices that they did, or at all.

83.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

84.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's common stock during the Class Period.

**COUNT II**

**Against the Individual Defendants**
**for Violations of Section 20(a) of the Exchange Act**

85.     Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-74 as if fully set forth herein.

86.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

87.     As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

88.     Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations.  Throughout the Class

Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company common stock.

89.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


DATED: January 22, 2024

                              **LABATON KELLER SUCHAROW LLP**

<u>/s/ Francis P. McConville</u>
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 8180-0477
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATION

I, Nathanael Aylestock, as Executive Director of West Virginia Laborers Pension Trust Fund ("West Virginia Laborers"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of West Virginia Laborers.  I have reviewed a complaint prepared against The Estée Lauder Companies Inc. ("Estée Lauder") alleging violations of the federal securities laws, and authorize the filing of this complaint;

2.      West Virginia Laborers did not purchase common stock of Estée Lauder at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      West Virginia Laborers is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.  West Virginia Laborers fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      West Virginia Laborers' transactions in Estée Lauder common stock during the Class Period are reflected in Exhibit A, attached hereto;

5.      West Virginia Laborers has not sought to serve as a lead plaintiff or representative party in any class actions under the federal securities laws filed during the last three years.

6.      Beyond its pro rata share of any recovery, West Virginia Laborers will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 22 day of January, 2024.

Nathanael Aylestock

Executive Director
West Virginia Laborers Pension Trust Fund

**EXHIBIT A**

**CLASS PERIOD TRANSACTIONS IN ESTÉE LAUDER COMMON STOCK**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 02/14/22 | 1,070 | $300.58 | ($321,623.38) |
| Purchases | 05/03/23 | 231 | $209.25 | ($48,336.61) |